UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X   DOCKET # 16 CV 6975

DONNELL SCOTT,

        Plaintiff,

   - against -

                                   **COMPLAINT**
                                   **TRIAL BY JURY IS**
                                   **DEMANDED**

THE CITY OF NEW YORK, CO CAPTAIN
"JOE" HINES, SHIELD NO. 81, and CO "JANE"
BREELAND, and CO "JOHN DOE", CO "JANE
DOE", and CO ""JEFF COE", (Names being fictitious
but intended to represent the officers assisting in the
use of force against plaintiff)

             Defendants.

--------------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

    1.    The plaintiff brings this action against all defendants pursuant to 42 U.S.C.
Section 1983 and 1988, the Fourth, Fifth Eighth and Fourteenth Amendments to the
United States Constitution, and under the common law of the United States, and the
State of New York against THE CITY OF NEW YORK, CO CAPTAIN "JOE" HINES,
SHIELD NO. 81, and CO "JANE" BREELAND, and CO "JOHN DOE", CO "JANE DOE",
and CO ""JEFF COE", (Names being fictitious but intended to represent the officers
assisting in the use of force against plaintiff)   , in their individual capacities and against
THE CITY OF NEW YORK to redress the deprivation under color of law of plaintiff's
rights, privileges and immunities secured by the Constitution of the United States.

    2.    Plaintiff seeks money damages to redress and remedy the deprivations of
her constitutional rights. Plaintiff seeks an award of attorneys' fees and costs pursuant
to 42 U.S.C. Section 1988 and pursuant to any other laws that may apply.

    3.    It is alleged that the individual correction officer defendants made an
unprivileged, unprovoked assault and battery of the person of the plaintiff, violating her
rights under the Fourth Fifth, Eighth and Fourteenth Amendments to the United States
Constitution, and that these defendants assaulted and battered the person of plaintiff, and
subjected him to retaliatory actions. It is further alleged that these violations and torts

were committed as a result of the policies, practices and customs of THE CITY OF NEW YORK, and THE NEW YORK CORRECTIONS DEPARTMENT

4.     While in the custody of the New York City Department of Corrections, (hereinafter "DOC"), and detained at the Eric M. Taylor Detention Center ("EMTC") within the Riker's Island prison complex, plaintiff was viciously assaulted by staff members of the DOC. The assault was an unprovoked and grossly excessive use of force. The defendant's foregoing conduct caused plaintiff to suffer physical, psychological and emotional injuries, and deprivation and violation of his civil, statutory and common law rights.

5.     The DOC and it's supervisors are, and have been aware that DOC staff members persistently use brutal force and cause prisoners serious injuries, and they have consistently, for years, failed to take meaningful and effective steps to curb the staff brutality in the jails. The incident involving plaintiff herein is part of a pattern of incidents wherein DOC officers use excessive and injurious force to command, control, or discipline inmates, including, without limitation in the case at bar, a fractured left ankle and right fifth metatarsal. Mr. Scott now seeks redress against the DOC employees who assaulted him and failed to intervene in her assault, their supervisors, and the City of New York.

6.     Plaintiff further alleges supplemental state law claims for violation of his rights secured by the Constitution of the State of New York, (sections 5, 11, 12), as well as Article 15 of the New York State Executive Law ("NYS Human Rights Law"), section 40, et. seq., of the New York State Civil Rights Law ("NYS Civil Rights Law"), and section 8-107, et. seq., 8-502 et. seq., and 8-603 et. seq., of the Administrative Code of the City of New York ("City Human Rights Law"), as well as common law claims of assault, battery.

7.     Upon information and belief, in an attempt to cover up and/or conceal their unlawful conduct, the defendant correction officers and their supervisors, acting individually and/or in concert or conspiracy with one another, then drafted, executed and filed knowingly false statements and reports, wherein they dishonestly stated that plaintiff

posed a danger to officers and others at the facility, that plaintiff caused or threatened to cause serious physical injury to an officer, and the defendant correction officers and their supervisors made other knowingly false accusations against plaintiff.

8.      Upon information and belief, the defendant correction officers and their supervisors lied, submitted false statements, and/or purposely failed to fully and faithfully investigate the subject incident, all in an effort to prevent the aforesaid unlawful conduct from coming to light.

9.      Following the subject incident, defendants were deliberately indifferent to plaintiff's injuries and medical needs and denied him reasonable and timely access to medical care and treatment, thereby exacerbating his injuries, pain and suffering, and causing an unnecessary and wanton infliction of pain.

10.     Following the subject incident plaintiff was moved to the "bullpen", placed in housing units known to harbor gangs, in further violation of plaintiff's constitutional statutory and common law rights, causing plaintiff to suffer further physical, psychological and emotional injuries and violation of his rights.

11.     As a result of the foregoing plaintiff was caused to and continues to suffer physical, psychological and emotional injuries.

## JURISDICTION AND VENUE

12.     This action is brought pursuant to the 4th, 5th, 8th and 14th amendment to the US Constitution, 42 U.S.C. Section 1983 and 1988 to redress the plaintiff's rights under the Constitution of the United States, and supplemental jurisdiction is alleged to redress violations of the Constitution of the State of New York, (sections 5, 11, 12) as well as Article 15 of the New York State Executive Law ("NYS Human Rights Law"), section 40, et. seq., of the New York State Civil Rights Law ("NYS Civil Rights Law"), and section 8-107, et. seq., 8-502 et. seq., and 8-603 et. seq., of the Administrative Code of the City

- 3 -

of New York ("City Human Rights Law"), as well as common law claims of assault, battery.

13.     Jurisdiction is based upon 28 U.S.C. Sections 1331 and 1343(a)(3)-(4), and 1367(a).

14.     This court has supplemental jurisdiction over the plaintiff's state law claims under 28 U.S.C. Section 1367 and the doctrine of pendent jurisdiction.

15.     Plaintiff's claim for attorney fees and costs is predicated upon 42 U.S.C. Section 1988, which authorizes the award of attorney's fees and costs to prevailing parties in actions brought pursuant to 42 U.S.C. Section 1983, as well as New York CPLR Article 86 and the City Human Rights Law Section 8-502(f) for pendent claims arising under New York state and local laws.

16.     Venue is appropriate in this court pursuant to 28 U.S.C. Section 1391(b)(2). All of the actions, omissions, and events complained of took place within the County of Bronx, City and State of New York, and within the venue of this court.

17.     The amount in controversy exclusive of interests and costs exceeds the sum of $100,000.

**JURY DEMAND**

18.     Plaintiff demands a trial by jury of this action.

**PARTIES**

19.     The plaintiff is a citizen of the United States and a resident of the Irvington, New Jersey.

20.     Defendant THE CITY OF NEW YORK (Hereinafter referred to as "THE CITY") is a body corporate and politic, duly organized and existing under and by virtue of the laws of the State of New York, and pursuant to law is capable of suing and being sued in this court.

21.     At all times hereinafter mentioned the THE NEW YORK CITY DEPARTMENT OF CORRECTIONS (Hereinafter referred to as "DOC") was and still is

- 4 -

a subdivision subject to the control of the THE CITY.

22.    Upon information and belief, DOC is a division of THE CITY
organized and existing under and by virtue of the laws of THE CITY and the State of
New York.

23.    Defendant THE CITY is responsible for the policies, practices and
customs of DOC.

24.    Defendant THE CITY is responsible for the hiring training, supervision,
retention, control and discipline of DOC and its officers.

25.    Defendant THE CITY is and was the employer of the personnel named
herein as individual defendants.

26.    Defendant THE CITY is also responsible for the operation, practices,
and totality of conditions of the DOC.

27.    DOC is responsible for the policies, practices and customs of
DOC.

28.    DOC is responsible for the hiring training, supervision,
retention, control and discipline of DOC and their officers.

29.    DOC is and was the employer of the personnel named herein
as individual defendants.

30.    DOC is also responsible for the operation, practices, and
totality of conditions of the DOC.

31.    THE CITY acts, or fails to act through its policy-making officials including
but not limited to its mayor, council, and the commissioner of the DOC; the acts and
edicts of these policy making officials represent also the policies, practices and
customs of THE CITY.

32.    THE CITY and DOC have, jointly and severally, a constitutional and
statutory responsibility for the conditions at the DOC and are jointly and severally
responsible for ensuring that the operations of said NYC jails are in conformity with

constitutional requisites.

33.    THE CITY and DOC are and were jointly and severally responsible for ensuring that the police officers of the DOC and more specifically those officers named as defendants herein, obeyed the regulations of the DOC, THE CITY, the ordinances and laws of THE CITY, and the laws and the Constitution of the State of New York and the United States.

34.    Defendants, THE CITY OF NEW YORK, CO CAPTAIN "JOE" HINES, SHIELD NO. 81, and CO "JANE" BREELAND, and CO "JOHN DOE", CO "JANE DOE"", and CO ""JEFF COE", (Names being fictitious but intended to represent the officers assisting in the use of force against plaintiff), are and were correction officers of the DOC and employees of the DOC and of THE CITY, and at all times herein were acting in such capacity as the agents, servants and employees of DOC and THE CITY.

35.    The defendant officers were at all times relevant to this complaint duly appointed and acting officers of the DOC and of THE CITY, acting under color of law; to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and THE CITY and DOC.

36.    At all times relevant hereto and in all of their actions described herein, each defendant was acting under color of law, state authority, statute, custom or usage, and pursuant to their official authority. All of the actions were done intentionally, recklessly and/or negligently

37.    Defendant CITY, through DOC, operates a number of detention jails. The department, through it's senior officials at the central office, in each facility, and in it's specialized units, promulgates and implements policies and procedures, including those with respect to the use, reporting and investigating of force by uniformed staff, and access to medical and other program services mandated by local law and court orders. In addition, senior officials in the DOC are aware of and tolerate certain

practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long standing, and deeply embedded in the culture of the agency, constitute unwritten DOC policies or customs. The DOC is also responsible for the appointment, training, supervision and conduct of all DOC personnel, including the defendants referenced herein.

38.     At all times hereinafter mentioned, defendant CO CAPTAIN "JOE" HINES, SHIELD NO. 81 was an officer within DOC and assigned to EMTC, acting in the capacity of agent, servant and employee of defendant CITY and of DOC, within the scope of his employment as such, and acting under color of law. This defendant worked at EMTC at the time of the incident alleged, and is believed to have participated, or witnessed, and failed to intervene in the beating of plaintiff. CO CAPTAIN "JOE" HINES, SHIELD NO. 81 is sued in his individual capacity.

39.     At all times relevant hereto, defendant CO "JANE" BREELAND, whose shield number plaintiff has been unable to obtain notwithstanding reasonable efforts to do so, was an officer within DOC and assigned to EMTC, acting in the capacity of agent, servant and employee of defendant CITY and DOC, within the scope of her employment as such, and acting under color of law. This defendant worked at EMTC at the time of the incident alleged, and is believed to have participated, or witnessed, and failed to intervene in the beating of plaintiff. CO "JANE" BREELAND is sued in her individual capacity.

40.     At all times relevant hereto, defendant CO "JOHN DOE", was an officer within DOC and assigned to EMTC, acting in the capacity of agent, servant and employee of defendant CITY and DOC, within the scope of his employment as such, and acting under color of law. This defendant worked at EMTC at the time of the incident alleged, and is believed to have participated, or witnessed, and failed to intervene in the beating of plaintiff and failure to provide medical care. CO "JOHN DOE", is sued in his individual capacity.

41.     At all times relevant hereto, defendant "JANE DOE", and ""JEFF COE", (Names being fictitious but intended to be officers involved in the assault of Plaintiff herein) whose shield numbers plaintiff has been unable to obtain notwithstanding reasonable efforts to do so, were officers within DOC and assigned to EMTC, acting in the capacity of agent, servant and employee of defendant CITY and DOC, within the scope of his employment as such, and acting under color of law. These defendant worked at EMTC at the time of the incident alleged, and are believed to have participated, or witnessed, and failed to intervene in the beating of plaintiff. They are sued in their individual capacity.

42. Defendants other than the CITY OF NEW YORK are collectively referred to as "individual defendants".

## CONDITIONS PRECEDENT

43.     This action is not barred by 42 U.S.C.S. § 1997e(a) the Prisoner Litigation Reform Act, because DOC excludes assaults from its grievance procedures. See DOC Directive No. 3375R, & II(B) (March 4, 1985) ("non-grievable issues" include "complaints pertaining to an alleged assault") Marte v. Coral, 2004 U.S. Dist. LEXIS 1790 (Copy citation) (SDNY February 11, 2004)

## STATEMENT OF FACTS

### A. New York City's Jails: A History of Abuse

44.     For decades, through DOC reports and civil litigation, DOC has been aware of the routine, dangerous and unconstitutional use of excessive force by staff at

individual facilities in the large, multi-jail New York City Department of Correction. (See, e.g., Fisher v Koehler, 692 F.Supp. 1519 (SDNY 1998), injunction entered, 718 F.Supp 1111 (1989), aff'd, 902 F2d 2 (2d Cir. 1990) (Correction Institute for Men); Jackson v Montemagno, CV 85-2384 (AS) (EDNY) (Brooklyn House of Detention); Reynolds v Ward, 81 CV 101 (PN:) (SDNY) (Bellevue Prison Psychiatric Ward); Sheppard v Phoenix, 91CV 4148 (RPP) (SDNY) (Central Punitive Segregation Unit))

45.    For example,  Sheppard v Phoenix, 91CV 4148 (RPP) (SDNY) (terminating injunction) was a class action that concerned the CITY's Central Punitive Segregation Unit (CPSU) That litigation unearthed abuse of prisoners and cover-ups sufficiently eggregious to merit criminal prosecution.

46.    Ingles v Toro, 438 F.Supp 203 (SDNY 2006) (approving stipulation of settlement) was a system-wide class action challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints by inmates who had been seriously injured by staff in the City's jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice and supervision of agency staff and investigators, and changes in the DOC's use of force policy.

47.    In fact, since 2002, senior supervisors and uniformed staff in the DOC have been sued repeatedly by inmates alleging staff beatings. Many of these cases, all resulting in favorable judgments for plaintiffs following settlement, include remarkably similar allegations of misconduct. See, e.g.,

      a. Reynolds v City of New York, 11CV 621 (SDNY) (Alleging beat-up in the George Motchen Detention center ("GMDC") resulting in shoulder fracture and loss of consciousness; settled for $200,500);

      b. Mull v  v City of New York, 08 CV 8854 (SDNY) (alleging beat-up in Anna M. Kross Detention Center ("AMKC") resulting in diffuse axonal

injury to brain, partial loss of eyesight, and partial loss of hearing, and requiring the victim to take seizure medications; settled for $550,000);

c. Belvett v  v City of New York, 09 CV 8090 (SDNY) (alleging beat-up at Robert N. Davoren Center ("RNDC") resulting in facial fracture; settled for $350,000);

d. Youngblood v Baldwin, 08 CV 5982 (SDNY) (alleging beat-up at George R. Vierno Center ("GRVC"), resulting in skull laceration and broken nose, settled for $240,000);

e. Williams v City of New York,. 07 CV 11055 (SDNY) (alleging beat-up in Otis Bantum Correctional Center ("OBCC") resulting in fractured jaw and facial bone and torn ear-lobe; settled for $202,500);

f. Williams v City of New York 09 cv 5734 (sdny) (alleging beat-up in RNDC resulting in lacerations to head, settled for $87,500);

g. Lee v Perez, 09 CV 3134 (SDNY) (alleging beat-up at North Infirmary Command ("NIC") resulting in multiple rib fractures, a spinal fracture and a collapsed lung, settled for $300,000);

h. Shufford v City of New York, 09 CV 945 (SDNY) (alleging two beat-ups at RNDC resulting in facial fractures, settled for $375,000);

i. Diaz v City of New York, 08 CV 4391 (SDNY) (alleging beat-ups involving two inmates, one at AMKC and one at OBCC; settled for $400,000 and $450,000 respectively);

j. Lugo v City of New York, 08 CV 2931 (SDNY) (alleging beat-up at NIC resulting in orbital fracture; settled for $185,000);

k. Cuadrado v City of New York, 07 CV 1447 (SDNY) (alleging beat-up at RNDC resulting in punctured lung, settled for $175,000);

l. Scott v City of New York, 07 CV 3691 (SDNY) (alleging beat-up at GMDC resulting in orbital fracture, settled for $175,000)

m. Pischeottola v City of New York, 06 CV 2505 (SDNY) (alleging beat-up at RNDC resulting in punctured lung requiring chest tube, settled for $150,000);

n. Rice v NYCDOC, 03 CV 582 (SDNY) (alleging beat-ups of two inmates at GRVC resulting in collapsed lung and contusion hematomas in one case, and in neck and spinal cord injuries causing permanent stutter in other; settled for $255,000 and $590,000, respectively);

o. Joseph v NYCDOC, 02 CV 9219 (SDNY) (alleging beat-up at GRVC resulting in orbital fracture, settled for $375,000)

48.   Additionally, through the DOCs elaborate reporting system, the defendants were aware of a pattern of a large number of incidents involving the use of unnecessary and/or excessive force by DOC staff members resulting in serious injuries to inmates but failed to take sufficient steps to curb these abuses.

49.   As of the time plaintiff was beaten, the supervisory defendants were aware of the unwillingness of the Department of Corrections to investigate wrongdoing and adequately impose meaningful discipline upon DOC staff members who use unnecessary and excessive force on prisoners, or who fail to accurately and honestly report it.

50.   Through all these cases and department reports, DOC and it's supervisors have been made aware of the widespread practice by DOC staff members of using excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failure of DOC's Investigation Division to adequately  investigate allegations of misconduct and of the de facto refusal of the department to bring effective disciplinary charges against it's officers to promote institutional reform, and protect the safety of prisoners confined in DOC custody.

51.   The DOC and supervisory defendants cannot credibly contend that they are unaware of a pattern of abuse that occurs with regularity in New York City jails and

the failure of the DOC to take sufficient measures to investigate and discipline this abuse.

52.    The DOC has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

53.    Upon information and belief, and at all times hereinafter mentioned, the CITY and/or DOC, it's departments, agents, servants, and/or employees owned, operated, maintained, managed, supervised, directed and/or controlled the jails and correctional facilities within the city of New York, including but not limited to EMTC, located on Riker's Island, 19-19 Hazen St., East Elmhurst, NY.

54.    Upon information and belief, and at all times hereinafter mentioned, the CITY and/or DOC were charged with the hiring, retention, direction, supervision, discipline, oversight, appointment and promotion of correction officers, supervisors and staff in their employ, including but not limited to the individual defendants.

55.    Upon information and belief, and at all times hereinafter mentioned, the individual defendants were acting under the direction, supervision, authority and/or control of the CITY and or DOC

56.    Upon information and belief, and at all times hereinafter mentioned, the CITY and/or DOC, it's departments, agents, servants, and/or employees managed, supervised, directed and/or controlled the custody, care and confinement and treatment of those persons arrested, confined and/or otherwise detained in it's various jails, including but not limited to the plaintiff.

57.    At all times hereinafter mentioned, the CITY, DOC, supervisory and individual defendants assumed the custody and care of the plaintiff.

58.    At all times hereinafter mentioned, the CITY, DOC, supervisory and individual defendants were entrusted with the custody and care of the plaintiff.

59.   At all times hereinafter mentioned, the CITY, DOC, supervisory and individual defendants assumed a duty of care of the plaintiff.

60.   At all times hereinafter mentioned, the CITY, DOC, supervisory and individual defendants owed a duty of care of the plaintiff.

61.   At all times hereinafter mentioned, the CITY, DOC, supervisory and individual defendants owed a special duty of care of the plaintiff.

62.   The DOC, through it's senior officials at the central office and in each of it's jails, promulgates and implements policies, including those with respect to the use of force, reporting and investigation of unlawful conduct by uniformed staff, and provision and access to medical care and other program services mandated by local law and court orders. The commissioner and senior officials in the DOC are aware of and tolerate certain practices by subordinate employees, including those that are inconsistent with formal policies.  These practices, because they are widespread, long-standing, and deeply embedded in the culture of the DOC, constitute unwritten DOC policies or customs.

63.   At all times mentioned herein, EMTC's wardens, security captains, medical directors, captains, lieutenants, sergeants, and other supervisors, had direct, first-line supervisory responsibilities over the individual defendant correction officers, including responsibility for taking appropriate measures to ensure and protect the civil and statutory rights and personal safety of detainees and prisoners in general, and the plaintiff in particular, who came into contact with said correction officers. These responsibilities were required to be carried out in a manner consistent with the laws and mandates that govern the United States of America, the State of new York, the City of New York, as well as DOC directives, consent decrees and orders.

64.   As alleged herein, the individual defendant correction officers used excessive physical force on plaintiff, assaulted and battered the plaintiff without legal justification; violated plaintiffs civil and constitutional rights while acting under color of

state law, and drafted and filed, or conspired to file, knowingly false disciplinary reports, incident reports, and medical reports regarding the subject incident, ignored, refused, denied and/or delayed plaintiff's requests for medical attention for his injuries, gave knowingly false statements, and took specific and definitive measures to cover up evidence of their unlawful activities.

65.   On July 18, 2016, within the Rikers Island Correctional Facility at 19-19 Hazen St., East Elmhurst, N.Y., in the County of Bronx, The Eric M. Taylor Correctional Center,  unfolding in the facility threat plaintiff was caused to sustain a fractured left middle finger. CO "JANE" BREELAND, while escorting inmates from 8 upper to the dining area for lunch, singled plaintiff out, threw him into a wall and bent his left finger back until it broke.

66.   Plaintiff was verbally abused and subjected to verbal intimidation by CO CAPTAIN "JOE" HINES, SHIELD NO. 81, and CO "JANE" BREELAND, and CO "JOHN DOE", CO "JANE DOE"", and CO ""JEFF COE", (Names being fictitious but intended to

represent the officers assisting in the use of force against plaintiff); he was subject to retaliation and placed in the "bullpen", and in dangerous housing units, causing additional physical, psychological and emotional injuries.

67.   As a result of the excessive use of force incident, plaintiff suffered physical injuries of an objectively serious and important nature, and plaintiff experienced prolonged and significantly increased pain and suffering.

68.   Plaintiff's aforesaid injuries significantly affect his daily activities, including but not limited to the ability to write and do other things with his hands like tie shoes.

69.   The supervisory staff within the DOC and the command structure of the DOC knew and/or have known that the pattern of harassment, intimidation, physical abuse, cover-up, and denial of proper medical care, as described above, existed and

still exists within the DOC. The DOC's failure to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of it's officers. The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial measures despite the fact that the foregoing has been persistently brought to the DOCs attention, constitutes deliberate indifference to the rights and safety of all individuals within their custody and plaintiff in particular. These defendant's conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional and other violations alleged in this complaint.

70.   DOC operates under a system wide policy. With some exceptions, the DOC trains all it's officers at a single training academy according to uniform curriculum; maintains a centralized Investigation Division to investigate allegations such as those contained herein under uniform procedures; and maintains a centralized unit to conduct administrative prosecutions (or to decline to prosecute, or to plea bargain) in those few instances where the DOC substantiates the allegations.

71.   The supervisory staff of the DOC has consistently failed to investigate allegations such as those contained herein and to discipline officers who have violated DOC guidelines. The investigation of these incidents by the central office and/or supervisory staff reflects a bias in favor of uniformed officers. Furthermore, officers and staff who are known to have violated an individual's civil rights in one command are often transferred by DOC to another command rather than be disciplined, demoted or fired by the DOC.

72.   Upon information and belief, the pattern of conduct alleged herein has been condoned by the commissioner and ranking commanders and supervisors of the DOC, who have been or are aware of the number, frequency and severity of these incidents and the continuing risk of physical injury at the hands of uniformed officers. The commissioner, facility wardens, and deputies, and supervisors, receive and/or

received a daily compilation of reports from DOC commands documenting violent incidents, including an officer's use of force. These reports, which are circulated throughout the DOC, contain brief summaries of incidents. These summaries have documented and continue to document routine uses of force by officers under circumstances which very often suggest that the officer's accounts are fabricated to cover up brutality and other misconduct. These reports routinely document injustices the same or similar to the allegations contained herein, and consistently find no basis to question the officer's conduct, even when an officer's reports describe conduct which is proscribed by DOC written policy or fails to account for the prisoner's injuries.

73.    With rare exception, officers whose misconduct is brought to the attention of supervisory personnel and the supervisory defendants, continue to work without any substantial disciplinary action being taken against them. Many of these officers are simply transferred to another jail, where their misconduct continues.

74.    Although the DOC has a computerized system capable of identifying officers involved in multiple unlawful incidents and/or cover-ups, this information has not been utilized by DOC commanders or supervisors to reduce the severity or incidence of these events. The fact that these abuses by officers remain unchecked and unrestrained leads the staff to believe that they can act with impunity.

75.    Similarly, CITY and DOC officials and supervisory staff have consistently failed to investigate grievances, prisoner complaints, and Board of Corrections complaints of officer harassment, intimidation and disrespect; excessive use of force; cover-ups' denial and/or delay of medical treatment or other inattention; violation of DOC directives and guidelines and other misconduct; and have failed to discipline the subjects of those grievances and complaints which were substantiated.

76.    Plaintiff had not resisted or assaulted the defendants in any way, and such force as was used against her was unnecessary, unreasonable, and excessive.

77.    At no time during the events described above was the plaintiff

intoxicated, incapacitated or disorderly, or a threat to the safety of himself or others. He had committed no criminal offenses or prison infractions. .

78.    The defendants had no warrant for the beating of the plaintiff, no probable cause for the beating of the plaintiff, and no legal excuse or cause to unconstitutionally and excessively and/or unnecessarily batter the person of the plaintiff.

79.    As a result of the foregoing plaintiff suffered a fractured ankle, mental anguish, shock, fright, apprehension, embarrassment, humiliation and deprivation of her constitutional rights.

80.    At all times during the events described above, the defendant correction officers were engaged in a joint venture. The individual defendants assisted each other in performing the various actions described, and lent their physical presence and support and the authority of their office to each other during said events, and failed to intervene to stop one another.

81.    All of the above acts were done both individually and in concert and intentionally and while acting under color of law, and in the scope of employment with THE CITY and the DOC. It was a conspiracy to deprive the plaintiff of his civil rights guaranteed under the Constitution of the State of New York and the United States and the laws of New York State and the laws of the United States.

82.    THE CITY and the DOC had a policy of not training their employees with respect to the proper use of force and allowing persons such as plaintiffs herein to be assaulted, battered and improperly treated.

83.    If THE CITY and DOC had a policy of training their employees with respect to the proper use of force, same was not enforced.

84.    On information and belief, the abuse to which the plaintiff was subjected was consistent with an institutionalized practice of THE CITY and the DOC which was known to them and/or ratified by THE CITY and the DOC, with the defendants at no

time having taken any effective action to prevent their employees from continuing to engage in such misconduct and violation of constitutional rights and violations of law.

85.    On information and belief, defendant THE CITY and the DOC had prior notice of the vicious propensities of the individual defendants but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority or to terminate their employment. The failure to properly train defendants included the failure to instruct them in applicable New York State Laws, and proper use of force, and failed to properly train them with respect to the constitutional rights of citizens.

86.    On information and belief THE CITY and the DOC authorized, tolerated as institutional practices, and ratified the misconduct heretofore described.

87.    As a direct and proximate result of the said acts of the defendants, and the abuse of authority detailed above, the plaintiff suffered the following injuries and damages:

> a. Violation of her constitutional rights under the Fourth Fifth, Eighth and Fourteenth Amendments to the United States Constitution to be free from excessive force
> b. Physical pain and suffering and emotional trauma and suffering, requiring expenditure of medical treatment.

88.    The actions of the defendant officers violated the following clearly established and well settled federal constitutional rights of plaintiff:

> a. Freedom from the use of excessive unreasonable and unjustified use of force against her person.

## FEDERAL CAUSES OF ACTION

### COUNT I. - VIOLATION OF 42 U.S.C. SECTION 1983 42 U.S.C. - INDIVIDUAL DEFENDANTS

89.    Paragraphs 1 through 88 are incorporated herein by reference as

though fully set forth.

90.     Plaintiffs claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against defendants CO CAPTAIN "JOE" HINES, SHIELD NO. 81, and CO "JANE" "JANE" BREELAND, and CO "JOHN DOE", CO "JANE DOE"", and CO ""JEFF COE", (Names being fictitious but intended to represent the officers assisting in the use of force

against plaintiff)  for violation of their constitutional rights under color of law, in an amount to be determined by a jury after due trial.

### COUNT II - VIOLATION OF 42 U.S.C. SECTION 1983 - CITY

91.     Paragraphs 1-90  are incorporated herein by reference as though fully set forth.

92.     Prior to July 18, 2016, THE CITY and the DOC developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in THE CITY, which caused the violation of plaintiff's rights.

93.     It was the policy and/or custom of THE CITY and the DOC to inadequately and improperly investigate citizen complaints of correction officer misconduct, and acts of misconduct were instead tolerated by THE CITY and the DOC.

94.     It was the custom and policy of THE CITY and the DOC to inadequately supervise and train and retain and hire their corrections officers including the defendant officers, thereby failing adequately to discourage further constitutional violations on the part of their corrections officers. THE CITY and the DOC did not require appropriate in-service training or re-training of officers who were known to have engaged in misconduct.

95.     As a result of the above described policies and customs, corrections

officers of THE CITY and the DOC, including the defendant officers believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be sanctioned or investigated, but would be tolerated.

96.     The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of THE CITY and the DOC to the constitutional rights of persons within THE CITY and were the cause of the violations of plaintiff's rights alleged herein.

97.     As set forth above, defendant correction officers did acting under color of law harass, intimidate, assault, batter, and use excessive physical force on plaintiff, conspired to violate plaintiff's rights, ignored, refused, denied, and/or delayed plaintiff's requests for medical attention, failed to follow medical orders, knowingly drafted and or filed or conspired to file false reports, incident reports and/or medical reports in an attempt to cover-up evidence of their unlawful activities, all without legal cause or justification and with purposeful intent to cause harm to plaintiff.

98.     As set forth above, the commissioner and DOC supervisors and officers failed to notify City or federal authorities as to what they had seen and/or heard.

99.     As set forth above, the commissioner and DOC supervisory personnel failed to take appropriate action to investigate and report the subject incident.

100.    As set forth above, the subject incident, as well as the defendant correction officers' ignoring, acquiescing, joining and/or complicity in same, constituted an unnecessary, unreasonable and excessive use of force.

101.    The defendants acted with deliberate indifference to the plaintiff's safety, security, health and immediate medical needs.

102.    As a direct and proximate cause of the defendant's deliberate indifference to plaintiff's objectively serious medical condition, the plaintiff's resulting physical, psychological, and emotional injuries, pain and suffering were significantly exacerbated.

103.    As set forth above, the defendants made every effort to conceal the truth about what exactly occurred, including but not limited to covering up, or attempting to cover up the illegal conduct complained of herein.

104.    The aforesaid acts and omissions violated the plaintiff's clearly established civil rights secured by the United States Constitution, and were the direct and proximate cause of the physical, psychological, and emotional injuries, pain and suffering she endured.

105.    The actions of the individual defendants were malicious.

106.    As set forth above, the commissioner, CITY and DOC have had, continue to have, a custom and practice of deliberate delay and avoidance in investigating allegations of abuse and other misconduct by their corrections officers, to the detriment of the plaintiff.

107.    The commissioner, CITY and DOC, their agents, servants an/or employees, including but not limited to the individual defendants, could have, by reasonable diligence, prevented the aforesaid wrongful acts from being committed.

108.    The commissioner, CITY and DOC, their agents, servants an/or employees, including but not limited to the individual defendants, by reasonable diligence, could have mitigated plaintiff's injuries had they intervened in the aforesaid wrongful acts and/or protected plaintiff.

109.    The commissioner, CITY and DOC, their agents, servants an/or employees, including but not limited to the individual defendants, violated plaintiff's constitutional rights by:

      a.    Harassing and intimidating plaintiff;

      b.    Assaulting an battering plaintiff;

      c.    Using unreasonable, unnecessary and excessive physical force on plaintiff;

      d.    Failing to intercede on behalf of plaintiff to prevent the

constitutional violations aforesaid, despite having an opportunity

to do so, but due to their deliberate indifference declined or

refused to do so;

e.    Engaging in a cover-up to conceal the wrongful and unlawful

conduct taken against the plaintiff;

f.    By subjecting plaintiff to cruel and unusual punishment.

110.   As a result of the foregoing, plaintiff was caused to be subjected to the deprivations of his rights, privileges and immunities secured by the constitution and statutes of the United States of America and has been damaged thereby.

111.   As a proximate and direct cause of the said defendant's conduct, plaintiff suffered and continues to suffer physical, psychological and emotional injuries.

112.   As a result of the foregoing, plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney fees, costs, expert's fees and disbursements pursuant to 42 USC section 1988. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against THE CITY and the DOC for violation of her constitutional rights under color of law, in an amount to be determined by a jury after due trial.

## COUNT III. - MUNICIPAL (MONELL) LIABILITY

113.   Paragraphs 1-112 are incorporated herein by reference as though fully set forth.

114.   The commissioner, warden and defendant correction officers, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the CITY or DOC but which is forbidden by the US Constitution.

115.   That prior to July 18, 2016, the commissioner, warden CITY and

DOC developed and maintained policies, customs, usages, practices, procedures and rules exhibiting deliberate indifference to the constitutional rights of prisoners, which caused the violation of plaintiff's rights.

116.   That the aforementioned customs, policies, usages, practices, procedures, and rules of the CITY and DOC, included but were not limited to: (a) ignoring the constitutionally protected rights of persons in their custody and control: (b) ignoring the statutorily protected rights of persons in their custody and control:(c) depriving the constitutionally protected rights of persons in their custody and control: (d) using force in an unreasonable, excessive, unnecessary, unjustified manner; (e) failing to adequately instruct and supervise the correction officers under their control in the proper and appropriate care and treatment of prisoners in their custody and control; (f) inadequately and/or improperly investigating complaints of harassment, intimidation, misconduct, excessive use of force, officer abuse, denial or delay of medical care, refusals to provide reasonable accommodations and other misconduct by corrections officers and supervisors, and inadequately punishing the subjects of such complaints as were substantiated; (g) tolerating acts of brutality; (h) the commissioner, internal affairs bureau and inspector general having substantially failed in their responsibility to investigate misconduct and discipline officers (i) having jails that operate to insulate corrections officers who engage in criminal or other serious official misconduct from detection, prosecution and punishment, and are maintained with deliberate indifference; (j) allowing corrections officers and supervisors to engage in a pattern and practice of actively and passively covering up misconduct by fellow officers, thereby establishing and perpetuating a "code of silence" which has become so ingrained on defendant CITY and DOC as to constitute a policy of the DOC and CITY.

117.   The long standing failure or refusal to supervise the correction officers under said defendant's control including supervisory staff, is now so institutionalized

as to constitute a policy or custom of tolerating and authorizing the type of abuse alleged herein. It is this policy or custom of abuse and cover up that has caused deprivation of the plaintiff's rights.

118.   Said defendant's policy or custom of tolerating and authorizing this type abuse is further evidenced by frequent and significant   findings of misconduct over a period of years by command personnel, supervisors, and the correction officers they supervise.

119.   The failures and refusals of the commissioner, CITY and DOC to hold these supervisors and corrections officers accountable is a proximate cause of the injuries suffered by plaintiff and undoubtedly hundreds of other prisoners.

120.   Through promotions and other financial and status incentives, the commissioner, CITY and DOC have the power to reward corrections officers who perform their jobs adequately and to punish - or to at least fail to reward - those who do not.  The commissioner, CITY and DOC's actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of officer harassment or intimidation, cover-up, medical neglect, or other misconduct, and fails to investigate these incidents, will suffer no damage to his or her career or financial penalty.

121.   The pattern of unchecked abuse by corrections officers and supervisory staff, the extent to which these unlawful practices have been adopted by significant numbers of the staff, and the persistent failure or refusal of the commissioner, CITY and DOC to supervise these persons properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorizes the claimed misconduct against the plaintiff.

122.   The foregoing customs, policies usages and practices and procedures and rules of the commissioner CITY and DOC, were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

123.   The foregoing customs, policies usages and practices and procedures and rules of the commissioner CITY and DOC, were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

124.   Prior to and at the time of the incidents complained of, there existed a pattern and practice of corrections harassment, intimidation, excessive use of physical force, cover-ups, and conspiracies to cover-up unlawful conduct refusals and/or failures to provide medical care or make medical care timely available, failures to conduct unbiased and thorough investigations of same and to discipline staff meaningfully and promptly for misconduct. The longstanding failure or refusal to supervise correction officers, including supervisory staff, are now so institutionalized as to constitute a policy or custom of tolerating and authorizing the wrongs alleged herein. It is this policy or custom of abuse and cover-up that has caused the deprivation of plaintiff's constitutional rights.

125.   The commissioner CITY and DOC have failed or refused to hold accountable high-ranking supervisors in the face of frequent and significant misconduct, over a period of years, by these supervisors and the officers they supervise. This failure has subjected plaintiff and other members of the public to the constitutional and statutory violations alleged herein. This failure is a proximate cause of the injuries sustained by the plaintiff and by other members of the public.

126.   As a proximate cause of the said defendant's conduct, plaintiff suffered and continues to suffer physical, psychological and emotional injuries.

127.   As a result of the foregoing, plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney fees, costs, expert's fees and disbursements pursuant to 42 USC section 1988. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against THE CITY and the DOC for violation of his constitutional rights under color of law, in an amount to be determined by a jury after due trial.

## COUNT IV. FAILURE TO PROTECT AND NEGLECT

128.   Paragraphs 1-127 are incorporated herein by reference as though fully set forth.

129.   All defendants, their agents, servants and employees owed a duty to care for and protect plaintiff while he was in their custody.

130.   As set forth above, all defendants failed to protect plaintiff from known and dangerous harms.

131.   As set forth above, all defendants failed to intervene and mitigate and/or stop the events alleged herein.

132.   All defendants failed to report the unlawful conduct alleged herein to supervisors.

133.    The commissioner, CITY and/or DOC, it's departments, agents, servants, and/or employees failed to investigate, sanction, and/or discipline any of the defendant correction officers for their aforesaid unlawful conduct.

134.   Due to the defendants failure to protect the plaintiff, he suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

135.   As a result of the foregoing, plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney fees, costs, expert's fees and disbursements pursuant to 42 U.S.C. section 1988. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against THE CITY and the DOC and all other defendants for violation of her constitutional rights under color of law, in an amount to be determined by a jury after due trial.

## PENDENT STATE CLAIMS

## COUNT V: ASSAULT AND BATTERY

136.   The allegations of Paragraphs 1-135 are incorporated by reference herein as though fully set forth.

137.   The individual defendants were working within the scope of their authority when they committed the actions described above generally and specifically those actions delineated above, and thereby assaulted and battered the plaintiff.

138.   The assault and battery aforesaid were without privilege or justification.

139.   The individual defendants were working within the scope of their employment when they committed the actions described above, and thereby assaulted and battered the plaintiff.

140.   The individual defendants were careless and reckless and negligent in that they did not stop or restrain their fellow officers from assaulting the plaintiff.

141.   As a result of the aforesaid assault and battery, the plaintiff  sustained serious and permanent personal injuries, along with humiliation, shame, indignity, damage to reputation and suffered emotional distress, in an amount to be determined by a jury after due trial.


## COUNT VI: VIOLATION OF NEW YORK STATE CONSTITUTION AND STATUTES

142.   The allegations of Paragraphs 1-141 are incorporated by reference herein as though fully set forth.

143.   As set forth above, plaintiff was deprived by defendants of his right to be free from gratuitous and excessive use of force, cruel and unusual punishment, and deprived of that due process of law as guaranteed to him by the constitution and statues of the city and state of New York, and the City Charter of the City of New York. The defendants conduct manifested intentional, negligent, and or deliberate indifference to plaintiff's rights, for which all defendants are liable.

144.   The aforesaid violations, and the failure of the supervisory personnel, the

commissioner, CITY and/or DOC to take appropriate steps to curb the widespread pattern of same or similar conduct by their corrections officers and staff, violated plaintiff's rights under the New York State Constitution to due process of law, and to be free from degrading treatment and physical abuse. Thus these defendants violated plaintiff's statutory rights.

145.   The defendant's conduct violated plaintiff's rights secured by the Constitution of the State of New York, as well as Article 15 of the New York State Executive Law ("NYS Human Rights Law"), section 40, et. seq., of the New York State Civil Rights Law ("NYS Civil Rights Law"), and section 8-107, et. seq., 8-502 et. seq., and 8-603 et. seq., of the Administrative Code of the City of New York ("City Human Rights Law")

146.   As a result of the foregoing, the plaintiff, he suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

147.   As a result of the foregoing, plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney fees, costs, expert's fees and disbursements, in an amount to be determined by a jury after due trial.


## COUNT VII. NEGLIGENCE


148.   The allegations of paragraphs 1-147 are incorporated by reference herein as though fully set forth.

149.   As set forth above, defendants, their agents, servants and/or employees, were negligent and the proximate cause of the injuries and damages suffered by plaintiff.

150.   As a result of the foregoing, the plaintiff, she suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

151.   As a result of the foregoing, plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney fees, costs, expert's fees and disbursements, in an amount to be determined by a jury after due trial.

## COUNT VIII. RESPONDEAT SUPERIOR

152.   The allegations of paragraphs 1-151 are incorporated by reference herein as though fully set forth.

153.   In as much as all supervisory and individual defendants were acting for, upon and/or in furtherance of the business of their employer and/or within the scope of their employment, the CITY and DOC are jointly and severally liable under the doctrine of respondeat superior for the tortious actions of same.

### RELIEF REQUESTED

Wherefore, the plaintiff requests that this Court:

a. Award compensatory damages to the plaintiff against the defendants, jointly and severally in an amount to be determined by a jury after due trial. Not less than one million dollars ($1,000,000)
b. Award the costs of this action to the plaintiff.
c. Award reasonable attorneys fees to the plaintiff under 42 U.S.C. Section 1988 and/or any other applicable laws.
d. Award punitive damages in an amount to be determined by a jury after due trial. Not less than one million dollars ($1,000,000)
e. Award such other and further relief as this Court may deem appropriate.

Dated: Carmel, New York
September 6, 2016

JOHN P. GRILL Grill9446
For LAW OFFICES OF JOHN P. GRILL, PC
229 Nimham Road
Carmel, NY 10512 (917) 601-5507

## VERIFICATION

The undersigned, being an attorney admitted to the practice of law in the courts of the State of New York, and the United States District Courts for the Eastern and Southern Districts, deposes and states that I am the attorney of record for the plaintiff in this matter, that I have read the contents of the annexed pleading and know same to be true, except those matters stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief as to those matters therein not stated upon knowledge is based upon information, data, memoranda, records given to me and maintained in a file in my office. The reason I make this verification is that the petitioner is not located in the County where affirmant's office is located.

I affirm that the foregoing statements are true under penalty of perjury.

Dated: Carmel, New York
    September 6, 2016        JOHN P. GRILL, ESQ.(9446jg)